UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



JTH TAX, INC. d/b/a
LIBERTY TAX SERVICE,

    Plaintiff,

v.

    Civil No. 2:13cv47

TRISHA GRABERT,

    Defendant.

## COMPLAINT

The Plaintiff, JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty"), by counsel, and for its Complaint against the Defendant, Trisha Grabert ("Grabert"), states as follows:

### The Parties

1. Liberty is a Delaware corporation with its headquarters and principal place of business at 1716 Corporate Landing Parkway, Virginia Beach, Virginia 23454.

2. Grabert is a citizen of the state of Kentucky whose last known home address is 5501 Wilke Farm Avenue, Louisville, Kentucky 40216.

### Personal Jurisdiction

3. Personal jurisdiction over Defendant exists in Virginia because:

    a. In the process of purchasing and operating a Liberty Tax franchise, Grabert had a substantial and continuing relationship with Liberty's headquarters in Virginia Beach, Virginia, including travel to Virginia to attend training class in Virginia Beach, and the submission of regular reports and other regular contact with Liberty in Virginia Beach, Virginia. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1984).

b.  Grabert's Franchise Agreement with Liberty contains a consent to jurisdiction clause in favor of Virginia. (Robert Oliver Decl. Exs. 1-4 § 15.b. ("Franchise Agreements"))

## Subject Matter Jurisdiction

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy, excluding interest and costs, exceeds $75,000.

## Venue

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this cause of action arose in Virginia Beach and because Grabert's Franchise Agreements contains a forum selection clause specifying venue in this Court. (Franchise Agreements § 15.b.)

## Factual Background

6. Liberty is engaged in the business of advertising, promoting and licensing a system of tax preparation centers throughout the United States.

7. On November 28, 2006, Grabert entered into a Franchise Agreement with Liberty for the territory known as KY017. This agreement expired by its own terms on November 28, 2011. Grabert signed the franchise agreement for KY017 in her personal capacity. (*See* Oliver Decl., ¶4, Ex.1.)

8. On January 19, 2012, Grabert signed a new Franchise Agreement with Liberty for territory KY017. The term of the franchise agreement was five years and was to expire on January 19, 2017. Grabert signed the franchise agreement for KY017 in her personal capacity. (*Id.* at ¶5, Ex. 2.)

9. On April 28, 2008, Grabert signed a franchise agreement with Liberty for the territory

2

known as KY151. The term of the franchise agreement was five years and was to expire on April 28, 2013. Grabert signed the franchise agreement for KY151 in her personal capacity. (*Id.* at ¶6, Ex. 3.)

10. On April 30, 2010, Grabert signed a franchise agreement with Liberty for the territory known as IN127. The term of the franchise agreement was five years and was to expire on April 30, 2015. Grabert signed the franchise agreement for IN127 in her personal capacity. (*Id.* at ¶7, Ex. 4.)

11. On April 30, 2010, Grabert signed a franchise agreement with Liberty for the territory known as IN121. The term of the franchise agreement was five years and was to expire on April 30, 2015. Grabert signed the franchise agreement for IN121 in her personal capacity. (*Id.* at ¶8, Ex. 5.)

12. To finance the purchase of the four franchises and for operating capital, Grabert executed the following promissory notes payable to Liberty, all of which have unpaid balances and are in default:

    a. Promissory note dated August 30, 2011, in the amount of $60,479.28 signed by Grabert as maker. To date $16,109.80 of the $60,479.28 is unpaid. (Danilo Jose Decl. ¶3.a., Ex. 1)

    b. Promissory note undated in the amount of $29,600.00 signed by Grabert as maker. The entire amount of this promissory note is unpaid. (Jose Decl. ¶3.b., Ex. 2)

    c. Promissory note dated April 30, 2010 in the amount of $32,000.00 signed by Grabert as maker. The entire amount of this promissory note is unpaid. (*Id.* at ¶3.c., Ex. 3)

  d. Promissory note dated April 30, 2010 in the amount of $32,000.00 signed by Grabert as maker. The entire amount of this promissory note is unpaid. (*Id.* at ¶3.d., Ex. 4)

13. On April 20, 2012, Liberty terminated Grabert's Franchise Agreements due to Grabert's failure to submit reports and failure to pay monies owed to Liberty. (Vanessa Szajnoga Decl. ¶8, Ex. 1)

14. Termination of the Franchise Agreements was also a default under each Promissory Note.

15. By their terms, the Promissory Notes provided that failure to pay the amounts due constituted a default.

16. Upon default, Liberty was entitled to accelerate the entire amount due under each promissory note, as proved by the terms of each promissory note. "If an event of default shall occur or if the undersigned shall fail to pay this Note in full at maturity, the entire unpaid balance of this Note and all accrued interest shall become immediately due and payable, at the option of Liberty, without notice or demand to any Obligor." (Jose Decl. Ex. 1-4)

17. As such, all amounts owed under the Promissory Notes became immediately due and payable.

18. Currently, Grabert's outstanding balance owed to Liberty under the Promissory Notes is $170,814.77. (Jose Decl., ¶6, Ex. 5)

19. Grabert failed to pay that amount, or any amount due, upon termination.

20. Grabert has admitted to owing Liberty past due monies: "I have been waiting for Liberty to take action against me first. Too bad, not happened yet. I owe them money, they can bring it." (http://www.unhappyfranchisee.com/liberty-tax-services-franchise-

4

complaints/comment-page-29/#comments, May 30, 2012, at 3:34pm, Ex. 1.)

21. Each Promissory Note provides for payment of all attorneys' fees, costs, or expenses that Liberty may incur in enforcing the Promissory Notes.

22. Upon termination of the franchised business, Grabert also became subject to post-termination duties stated in the Franchise Agreements at Section 9 and 10. These post-termination duties, as are pertinent to this case, include the following:

   a. "Stop identifying yourself as a Liberty Tax franchisee, never hold out as a former Liberty Tax franchise and cease, and not thereafter commence, use of any of the Marks or any marks which are likely to be confused with the Marks" (Section 9.b.);

   b. "Pay to us all amounts owing to us, whether related to the Territory or not" (Section 9.d.);

   c. "Transfer to us all telephone numbers, listings and advertisements used in relation to the Franchised Business and deliver to us copies of such documents of transfer" (Section 9.e.)

   d. "Deliver to us any original and all copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, email addresses, or phone numbers of customers who patronized the Franchised Business" (Section 9.f.);

   e. "Deliver to us any original and all copies, including electronic copies and media, containing customer tax returns, files, and records" (Section 9.g.);

   f. "Deliver to us the copy of the Operations Manual and any updates which we loaned to you" (Section 9.h.); and

 g. "You agree not to disparage Liberty or its current and former employees or directors. During the term of this Agreement, you also agree not to do any act harmful, prejudicial or injurious to Liberty" (Section 10.f.)

23. Since termination, Grabert has refused to turn over the phone numbers to her previous Liberty offices.

24. Since termination, Grabert has failed to turn over the originals and any copies of the customer files to Liberty.

25. Since termination, Grabert has failed to return the copy of the Operations Manual to Liberty.

26. Since termination, Grabert has posted numerous disparaging and/or defamatory statements on various internet sites, including but not limited to, www.unhappyfracnhise.com and www.wlwt.com, about Liberty, its officers, and employees. (Pam Evans Decl. ¶4-7, Exs. 1-3; Exs. 2-7.)

27. Grabert has refused to comply with her contractual obligations under the Franchise Agreements.

## COUNT I
## BREACH OF PROMISSORY NOTES

28. Liberty repeats and re-alleges paragraphs 1-27 as if fully set forth herein.

29. Grabert executed a Promissory Note dated August 30, 2011, in the amount of $60,479.28 signed by Grabert as maker. To date $16,109.80 of the $60,479.28 is unpaid.

30. Grabert executed a Promissory Note undated in the amount of $29,600.00 signed by Grabert as maker. The entire amount of this promissory note is unpaid.

31. Grabert executed a Promissory Note dated April 30, 2010 in the amount of

6

$32,000.00 signed by Grabert as maker. The entire amount of this promissory note is unpaid.

32. Grabert executed a Promissory Note dated April 30, 2010 in the amount of $32,000.00 signed by Grabert as maker. The entire amount of this promissory note is unpaid.

33. On April 20, 2012, Liberty terminated Grabert's Franchise Agreements due to Grabert's failure to submit reports and failure to pay monies owned as required in Sections 8.c.(ii) and 8.c.(iii).

34. Termination of the Franchise Agreements was also a default under all the Promissory Notes.

35. By their terms, the Promissory Notes provide that failure to pay amount due constituted a default.

36. Upon default, Liberty accelerated the notes, as provided under the terms of the promissory notes, and all amounts owned under the Promissory Notes became immediately due and payable.

37. Grabert failed to pay that amount upon termination.

38. Grabert breached each of the Promissory Notes by failing to pay amounts due.

39. Liberty has suffered damages as a result.

## COUNT II
## BREACH OF FRANCHISE AGREEMENTS

40. Liberty repeats and re-alleges paragraphs 1-39 as if fully set forth herein.

41. Grabert breached her franchise agreements for KY017, KY151, IN121, and IN127 by failing to turn over the originals and any copies of the customer files to Liberty.

42. Grabert breached her franchise agreements for KY017, KY151, IN121, and IN127 by failing to turn over the phone numbers to her previous Liberty offices to Liberty.

43. Grabert breached her franchise agreements for KY017, KY151, IN121, and IN127 by failing to deliver her copy of the Operations Manual to Liberty.

44. Grabert breached her franchise agreements for KY017, KY151, IN121, and IN127 by posting disparaging remarks about Liberty, its officers, and employees on websites, including but not limited to www.unhappyfranchise.com and www.wlwt.com.

45. Grabert breached each Franchise Agreement Grabert executed by failing to adhere to the post-termination duties contained in sections 9 and 10 of the Franchise Agreements in the ways specified above, as well as such other and further breaches as investigation and discovery may reveal.

46. Liberty suffered damages and irreparable harm (from the non-monetary breaches), and will continue to suffer damages and irreparable harm because of such breaches, unless the Grabert, and all of her agents, employees and all other persons in active concert or participation with her, are enjoined from further breaches by this Court.

## COUNT III
## DEFAMATION PER SE

47. Liberty repeats and re-alleges paragraphs 1-46 as if fully set forth herein.

48. The following false statements are attributed to Grabert:

   a. "The system is wrong, a scam, a scheme, a con."

      (http://www.unhappyfranchisee.com/liberty-tax-services-franchise-complaints/comment-page-37/#comments on January 23, 2013, at 6:30pm, Ex. 2.)

   b. "You were worried for good reason, and I protected your identity for good reason as I would with anyone dealing with these crooks regardless. IF Liberty Tax, as a whole, were not crooks, your gut would have never led you here. . . There is plenty wrong with Liberty Tax that would have never happened at a competing

8

f. "They don't care about customer retention, that is on the backs of franchisees. They pretended to care about franchisee retention, but truth is they care about turnover and spending on training newbies to love Liberty when the old calls them out on their overcharging and royalty secret ways to hike it up with their accounting methods." (*Id.* on June 3, 2012, at 4:45pm)

g. "DO NOT BUY THIS FAILING FRANCHISE. IT IS ALL A SHOW, there is absolutely no growth in this industry and next season will be at a bigger decline. He cannot even give these territories away to anyone with intellegence at this point so he is ready to cash in at a much more aggressive pace and take it all." (http://www.unhappyfranchisee.com/liberty-tax-services-franchise-complaints/comment-page-29/#comments on May 29, 2012, at 12:55pm, Ex. 6.)

h. "I do blame Liberty Tax Service's unlawful actions interfering with my success as many others do. . . When they unlawfully steal YOUR stores and breach trust with YOU, then you just may feel differently on another day." (http://www.unhappyfranchisee.com/liberty-tax-services-franchise-complaints/comment-page-28/#comments at May 23, 2012, at 9:40am, Ex. 7.)

i. "Liberty big man cocky CEO of their's, Mr. Hewitt is being investigated for Racketteering and training a tax scheme as well as many unhappyfranchisees website of stores they steal and pay nothing, then make money reselling them over and over." (Evans Decl. ¶4, Ex. 1.)

49. Grabert committed defamation per se as her statements cast aspersion on Liberty's honesty, credit, efficiency or its prestige or standing in its field of business.

50. The above statements are defamation per se and on information and belief were

10

written by Grabert negligently, recklessly, and/or maliciously, with the knowledge that said statements are false and for the sole purpose to damage the good will and reputation of Liberty.

51. Grabert published these defamatory statements on public websites, including www.unhappyfranchisee.com and www.wlwt.com.

52. Due to the publication of these false and defamatory statements, Liberty has suffered damages.

WHEREFORE, in consideration of the foregoing, plaintiff JTH Tax, Inc. b/d/a Liberty Tax Service respectfully prays for the following relief:

1. That it be granted a judgment for damages in its favor against Grabert for amounts due under Grabert's Promissory Notes in the total amount of $170,814.77

2. That it be granted a judgment for damages in its favor against Grabert for the breaches of the Franchise Agreements;

3. That it be granted a judgment for compensatory and punitive damages in its favor against Grabert for defamation per se;

4. That a temporary injunction, later to be made permanent, be granted compelling Grabert and all her agents, employees and all other persons in active concert or participation with her to:

 a. Stop identifying themselves as a Liberty Tax franchisee, never hold out as a former Liberty Tax franchisee and cease, and not thereafter commence, use of any of the Marks or any marks which are likely to be confused with the Marks;

 b. Deliver to Liberty all customer lists and information;

 c. Deliver to Liberty all customer tax returns, files, records, and copies;

 d. Deliver to Liberty the Operations Manual and all updates;

    e.   Transfer to Liberty all telephone numbers, listings and advertisements used in the former Liberty offices and deliver to Liberty copies of copies of such documents of transfer;

    f.   Stop and remove all posts that disparage Liberty or its current and former employees or directors.

    g.   Stop and remove all defamatory posts or statements regarding Liberty or its current and former employees or directors.

5. Award Liberty its costs and attorney's fees, pursuant to each Promissory Note; and

6. Grant Liberty such other and further relief as this Court may deem just and proper.

 

JTH Tax, Inc. d/b/a Liberty Tax Service

By: _____
        Of Counsel

David Lindley, Jr. (VSB # 71215)
Corporate Counsel
JTH Tax, Inc. d/b/a Liberty Tax Service
1716 Corporate Landing Parkway
Virginia Beach, VA 23454
Telephone number: 757-493-8855
Fax number: 800-880-6432
Email: david.lindley@libtax.com