

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JTH TAX, INC.,
D/B/A LIBERTY TAX SERVICE,

    Plaintiff,

v.                                          Civil No.: 2:13cv47

TRISHA GRABERT,

    Defendant.

## AMENDED OPINION AND ORDER[1]

This matter is before the Court on an unopposed Motion for Default Judgment filed by Plaintiff, JTH Tax, Inc., d/b/a Liberty Tax Service ("Liberty"). Defendant Trisha Grabert ("Grabert" or "Defendant") has not filed a response in opposition to the instant motion, and the time for doing so has long since passed. For the reasons set forth below, Liberty's Motion for Default Judgment is **GRANTED, in part,** and the Court **WITHOLDS ruling, in part**, until an evidentiary hearing is conducted.

---

[1] The instant "Amended Opinion and Order" replaces the Opinion and Order entered in this case on December 30, 2013. ECF No. 15. The final relief ordered with respect to contractual damages and attorney's fees remains unchanged from the relief ordered in the Court's prior Opinion and Order. **Accordingly, the Judgment entered on December 31, 2013, ECF No. 16, remains in full effect**. The only substantive changes contained herein consist of revisions to the Court's interlocutory defamation analysis contained in Part III.C. See American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003) ("[A] district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted.").

## I. FACTUAL AND PROCEDURAL BACKGROUND

Liberty is engaged in the business of advertising, promoting, and licensing a system of tax preparation centers throughout the United States. Compl. ¶ 6, ECF No. 1. Between 2008 and 2012, Grabert signed four franchise agreements with Liberty for four separate "Liberty Tax" franchise locations and executed four promissory notes payable to Liberty. Id. ¶ 12. Each of the franchise agreements expressly sets forth Grabert's contractual post-termination duties including: paying all amounts due to Liberty, ceasing to associate herself with Liberty, transferring all telephone numbers, customer files, and operations manuals to Liberty, and adhering to limited covenants not to compete. Aff. of Robert Oliver, Exs. 2-5, ECF No. 6.

On April 20, 2012, Liberty terminated all four of Grabert's franchise agreements due to her failure to submit contractually required reports and failure to pay monies owed to Liberty. Compl. ¶ 13. The promissory notes associated with the terminated franchises expressly provide that failure to timely pay the amounts due constitutes a default and authorizes Liberty to accelerate the entire outstanding debt. Aff. of Danilo Jose, Exs. 1-4, ECF No. 4. Each promissory note also requires payment of all attorney's fees, costs, or expenses that Liberty may incur in enforcing the notes. Id.

On January 28, 2013, Liberty filed a complaint in this Court against Grabert alleging breach of the promissory notes, breach of the franchise agreements, and defamation per se. Compl. ¶¶ 6-12. Liberty's complaint seeks monetary damages and equitable relief in the form of a permanent injunction. Liberty's claimed damages result from Grabert's failure to make timely payments, refusal to abide by her post-termination obligations, and defamatory postings on the internet.

On April 8, 2013, Grabert was properly served with a copy of the summons and complaint. Summons, ECF No. 8. However, Grabert failed to file a responsive pleading. On May 6, 2013, Liberty requested Entry of Default, and the Clerk entered default on May 7, 2013. ECF No. 10. Liberty, thereafter, filed the instant motion for default judgment, and the time for Grabert's response has long since passed. Liberty's motion for default judgment is therefore ripe for review.

## II. STANDARD OF REVIEW

"A court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right." EMI April Music, Inc. v. White, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009). When a defendant defaults he admits "the plaintiff's well-pleaded allegations of fact." Ryan v. Homecomings Fin.

3

Network, 253 F.3d 778, 780 (4th Cir. 2001) (internal quotation marks and citations omitted); see also Fed. R. Civ. P. 8(b)(6). In determining whether a plaintiff has presented well-pled allegations of fact, the Supreme Court of the United States has interpreted the Federal Rules of Civil Procedure as requiring that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Accordingly, in the default judgment context, factual allegations in the complaint are deemed admitted and the "appropriate inquiry is whether or not the face of the pleadings supports the default judgment and the causes of action therein." Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians, 187 F.3d 628 (4th Cir. 1999) (unpublished table opinion) (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).

### III. DISCUSSION

Liberty's instant motion for default judgment seeks an award of: (1) all amounts due on the promissory notes and the attorney's fees incurred in conjunction with enforcement of such notes; (2) a permanent injunction to enforce the post-termination obligations of the franchise agreements; and (3) compensatory damages, punitive damages, and a permanent

4

injunction based on Defendant's defamation of Liberty.[2] As discussed below, the Court: (1) grants Liberty's motion for default judgment as to the breach of the promissory notes; (2) withholds judgment as to Liberty's injunctive relief claim; and (3) grants Liberty's motion for default judgment as to liability on the defamation claim, but withholds ruling on the amount of defamation damages.

### A. Breach of Promissory Notes

#### 1. Outstanding Balance on the Notes

First, Liberty asserts a claim against Grabert based on the four unpaid promissory notes, seeking damages in the aggregate amount of $170,814.77. Pl's Mem. in Supp. of Mot. for Default J. ("Pl's Mem.") at 3-4, ECF No. 12; Aff. of Danilo Jose, Ex. 5. As set forth in Liberty's complaint, Liberty and Grabert entered into four enforceable written franchise agreements and four associated promissory notes. Aff. of Danilo Jose, Exs. 1-4. Under Virginia law, a breach of contract occurs if a party "without legal excuse fails to perform an obligation in a timely manner." Va. Code Ann. § 59.1-507.1(a).[3] Assuming the truth of

---

[2] Liberty requests $40,000 in compensatory damages for the claimed defamation, which represents an amount "equal to the loss of one new franchise sale." Pl's Mem. in Supp. of Mot. for Default J. at 8, ECF No. 12. As for punitive damages, Liberty requests $80,000, which is "equal to the loss of two unsold franchises." Id. at 9.

[3] Both the franchise agreements and the notes expressly provide that the contractual terms are to be construed and enforced according to

the facts stated in the complaint, the Court finds that Grabert has materially breached the franchise agreements and associated promissory notes by failing to make scheduled payments. As a result of such breaches, Liberty has appropriately invoked its contractual right to accelerate the outstanding balances. Liberty has presented the Court with the promissory notes themselves, as well as affidavits setting forth the outstanding balances on such notes, and there has been no challenge to the enforceability or validity of the notes. Liberty's submissions reveal an outstanding balance of $170,814.77. Accordingly, Liberty's motion for default judgment is **GRANTED** as to the claim asserting a breach of the promissory notes, and judgment is entered in Liberty's favor in the amount of **$170,814.77**.

### 2. Attorney's Fees

In addition to seeking the balance due on the promissory notes, Liberty seeks attorney's fees incurred in order to enforce such notes. Pl's Mem. at 4-5. In each of the four promissory notes signed by Grabert, there is a provision stating "[t]he undersigned agrees to pay all attorneys' fees and other costs and expenses that Liberty may incur in connection with the collection or enforcement of this Note." Aff. of Danilo Jose, Exs. 1-4.

---

Virginia law. Aff. of Robert Oliver, Exs. 2-5; Aff. of Danilo Jose, Exs. 1-4.

Despite Grabert's failure to appear to contest an attorney's fee award, "the Court is nevertheless obligated to review the fee award request independently for reasonableness." Kennedy v. A Touch of Patience Shared Hous., Inc., 779 F. Supp. 2d 516, 525 (E.D. Va. 2011). To calculate the appropriate attorney's fees award, the Court must determine a "lodestar figure" which is calculated by multiplying "the number of reasonable hours expended times a reasonable rate." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009). To determine the "reasonable" number of hours and rate, the Court's discretion should be guided by the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Id. at 243-44 (quoting Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978)). In determining the lodestar figure, "the court need not address in detail every single one of these

factors." Dollar Tree Stores, Inc. v. Norcor Bolingbrook Associates, LLC, 699 F. Supp. 2d 766, 768 (E.D. Va. 2009).

Here, Liberty is represented by David Lindley, a fifth year associate acting as lead counsel in this case. Mr. Lindley asserts that he spent 17.7 compensable hours on this matter, consisting of drafting Liberty's complaint, drafting and assembling associated exhibits, pursuing entry of default, and pursuing default judgment. Aff. of David Lindley, ECF No. 13. To support such assertion, Mr. Lindley submitted an affidavit and exhibit containing detailed time entries for his work on this matter. Mr. Lindley's affidavit also sets forth his credentials in an effort to justify the requested rate of $225 per hour. Id. Having reviewed such submission, the Court finds that the number of hours billed by Liberty's counsel is reasonable based on the work performed. Further, the hourly rates claimed are reasonable and consistent with recent fee awards in the Norfolk Division of the Eastern District of Virginia, including: (1) a recent fee award of $225 per hour to another fifth year associate representing Liberty in a case before another judge of this Court, JTH Tax, Inc. v. Cochise Potts, No. 2:09-cv-108 (E.D. Va. Jan. 11, 2013); and (2) a recent fee award of $225 per hour to Mr. Lindley himself in a

case before the undersigned judge, JTH Tax, Inc. v. Callahan, No. 2:12-cv-691 (E.D. Va. July 8, 2013).[4]

Multiplying the number of reasonable hours (17.7) by the reasonable rate ($225) would result in a fee award of $3,982.50. However, as discussed herein, Liberty advances three claims in its complaint, only one of which is related to the promissory notes that include a provision for the recovery of attorney's fees. Liberty offers no legal basis for recovery of attorney's fees for the time spent pursuing the other two claims. Furthermore, Liberty fails to effectively document the division of time between tasks for which there is a valid legal basis to recover fees, and tasks for which no legal basis is asserted. Proper documentation of compensable hours is essential to the proper calculation of a fee award, and "[i]nadequate documentation is a basis for reducing or denying a fee award." E.E.O.C. v. Nutri/Sys., Inc., 685 F. Supp. 568, 573 (E.D. Va.

---

[4] The primary support for the hourly rate charged by Liberty's counsel is Mr. Lindley's own sworn statement that he inquired with other attorneys and determined that $225 is a customary fee for a fifth year associate in this region. Aff. of David Lindley, ¶ 6. The Court awards the unchallenged requested hourly rate of $225 in this case because of the Court's own familiarity with recent cases before this Court and reasonable rates in the area, including the two cases cited above, both of which included an affidavit from counsel that did not represent Liberty. However, Mr. Lindley is reminded that it is his burden to prove that his fee request falls within prevailing market rates and that an affidavit from disinterested counsel is typically submitted to satisfy such burden. See Project Vote/Voting for America, Inc. v. Long, 887 F. Supp. 2d 704, 710 (E.D. Va. 2012) (discussing the types of evidence that is typically submitted to demonstrate prevailing market rates).

1988) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see Hensley, 461 U.S. at 434 (indicating that counsel should not recover for hours that are "excessive, redundant, or otherwise unnecessary").

Here, even though three claims are asserted, it appears that Liberty may have been able to recover fees for the majority of the 17.7 hours requested had Liberty more effectively documented the division of its counsel's time and/or presented evidence demonstrating that many of the hours claimed (such as time spent drafting affidavits and reviewing the contracts) would have been expended regardless of whether Liberty also pursued injunctive relief and relief for defamation. However, because it is improper for the Court to speculate on such matters, and in light of the lack of such detail regarding division of time, the fee award will be reduced to **$1,600**, a reduction of approximately sixty percent, based on Liberty's failure to differentiate the time spent on compensable hours and non-compensable hours. Liberty is therefore **AWARDED** attorney's fees in the amount of **$1,600.**

### B. Breach of the Franchise Agreements

Liberty's second claim asserts that Grabert failed to comply with the contractual post-termination obligations set forth in each of the four franchise agreements. Pl's Mem. at 6. Based on such failure, Liberty seeks a permanent injunction

enforcing the written post-termination obligations. Id. In determining whether a permanent injunction is appropriate, the Court must evaluate whether Liberty pled facts sufficient to demonstrate the following four factors:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Legend Night Club v. Miller, 637 F.3d 291, 297 (4th Cir. 2011) (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)).

Considering whether Liberty has demonstrated irreparable harm, the Court finds that Liberty's complaint and supporting materials include limited facts, are somewhat conclusory, and therefore are not sufficient to support entry of an injunction. See Ryan, 253 F.3d at 780 (explaining that while well-pleaded allegations of fact in a complaint are accepted as true for the purposes of default judgment, a party's failure to defend does not constitute an admission of conclusions of law). Similarly, Liberty's brief in support of default judgment relies on little more than the citation to prior Liberty cases, heard by other judges of this Court, where the Court granted Liberty a permanent injunction based on a similar franchise agreement. See JTH Tax, Inc. v. Lee, 514 F. Supp. 2d 818, 826 (E.D. Va.

11

2007); JTH Tax, Inc. v. Smith, No. 2:06cv76, 2006 WL 1982762, at *3 (E.D. Va. June 23, 2006). However, such prior cases involved former Liberty franchisees actively operating a competing tax business subsequent to the termination of their relationship with Liberty, resulting in the irreparable loss of Liberty's former and potential clients, and, in the Smith case, the continued improper use of Liberty's trademarks.

In contrast, here, Liberty's complaint states that Grabert failed to turn over customer files, phones numbers of her previous offices, and her copy of the Liberty "operations manual." Compl. ¶¶ 41-43. Liberty further offers the conclusion of law that: "Liberty suffered damages and irreparable harm and will continue to suffer damages and irreparable harm because of [Grabert's] breaches." Compl. ¶ 46. Notably, Liberty does not include facts asserting that Grabert has improperly used any of such retained materials to compete with Liberty, nor does Liberty reveal the number of customers Grabert served at the former franchises, whether the phone lines remain active or disconnected, or whether Liberty has reopened franchises in the locations (or near the locations) of Grabert's former tax preparation businesses.

Although the Court does not question the potential for irreparable harm on the instant facts, it is improper for the Court to award the extraordinary equitable remedy of a permanent

12

injunction based on speculation as to the possibility of irreparable injury. See Monsanto Co. v. Geertson Seed Farms, 130 S. Ct. 2743, 2761 (2010) ("An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course."). Because facts relevant to the injunction determination remain undeveloped, the Court concludes that an evidentiary hearing is warranted on this issue pursuant to Fed. R. Civ. P. 55(b)(2). The Court therefore **WITHHOLDS** ruling on Liberty's motion seeking entry of default judgment in the form of a permanent injunction.[5]

### C. Defamation Per se

Third, Liberty seeks damages for defamation per se based on Grabert's posting of defamatory statements on the internet. Whether a statement contains or infers "provably false" facts, and thus is capable of being defamatory, or whether it is a non-actionable "statement[] of opinion," is a question of law for the Court. Hyland v. Raytheon Technical Services Co., 277 Va. 40, 46-47, 670 S.E.2d 746, 750-51 (2009). Moreover, if a statement is actionable, there are several ways to establish that it constitutes "defamation per se," including if the challenged statements: "[1] impute[] the commission of a

---

[5] In light of the limited facts before the Court and the Court's ruling permitting Liberty an opportunity to submit additional evidence to support its claim for injunctive relief, the Court does not comment on the remaining three prongs of the injunction test.

13

criminal offense involving moral turpitude for which a party may be convicted; . . . [2] impute[] an unfitness to perform the duties of a job or a lack of integrity in the performance of the duties; or [3] prejudice[] the party in her profession or trade." Yeagle v. Collegiate Times, 255 Va. 293, 297 n.2, 497 S.E.2d 136, 138 (1998) (citing Fleming v. Moore, 221 Va. 884, 889, 275 S.E.2d 632, 635 (1981)). To prejudice a plaintiff in its profession or trade, "the statements must relate to 'the skills or character required to carry out the particular occupation of the plaintiff.'" Swengler v. ITT Crop. Electro-Optical Products Div., 993 F.2d 1063, 1070-71 (4th Cir. 1993) (quoting Fleming, 221 Va. at 890, 275 S.E.2d at 636).

Corporations, as well as individuals, can be defamed per se by statements that cast aspersions on the target's "'honesty, credit, efficiency or its prestige or standing in its field of business.'" Id. at 1071 (quoting General Products Co., Inc. v. Meredith Corp., 526 F. Supp. 546, 549-50 (E.D. Va. 1981)). Once a plaintiff proves defamation per se, "Virginia law presumes that the plaintiff suffered actual damage to its reputation and, therefore, [the plaintiff] does not have to present proof of such damages." Id. (citing Fleming, 221 Va. at 889-90, 275 S.E.2d at 636).

In addition to damages compensating a plaintiff for defamation per se, "'punitive damages may be awarded even though

14

actual damages are neither found nor shown.'" Id. (quoting Newspaper Publishing Corp. v. Burke, 216 Va. 800, 805, 224 S.E.2d 132, 136 (1976)). To recover punitive damages, a plaintiff must demonstrate through "clear and convincing proof that the defendant made the statements with 'actual malice.'" Id. (citations omitted). "Actual malice" is defined under Virginia law to include "a statement made with 'knowledge that it was false or with reckless disregard of whether or not it was false.'" Id. (quoting Burke, 216 Va. at 805, 224 S.E.2d at 136). "[A] plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence, and it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry." Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 668 (1989) (internal citations omitted).

Applying these principles, and assuming as true all well-pled facts in Liberty's complaint, the Court concludes that Liberty has presented sufficient facts to demonstrate that portions of Grabert's internet postings constitute defamation per se. Grabert's defamatory statements include false factual assertions that prejudice Liberty in its profession or trade. Specifically, Grabert's internet postings include assertions that: (1) Liberty's quarterly results were "lies" and "deceptive"; (2) Liberty was engaged in "unlawful actions" that

15

interfered with Grabert's success; (3) Liberty "encouraged/ persuaded and ordered" its franchisees to falsify their business records; (4) Liberty's system is "a scam, a scheme, a con"; and (5) Liberty's CEO "is being investigated for Racketteering [sic] and training a tax scheme" and Liberty "steal[s]" stores from franchisees and pays nothing for them. See Compl. ¶ 48; Compl. Ex. 2; Aff. of Pamela Evans Ex. 1, ECF No. 3-1.[6] These statements impute a lack of integrity to Liberty, prejudice Liberty in its profession or trade, and cast aspersions on Liberty's honesty, efficiency, prestige, and standing in its field of business. Therefore, in light of Grabert's failure to appear in this case and defend the accuracy of her statements, the five statements identified above constitute defamation per se.

Having found defamation per se, the Court next considers whether Liberty has demonstrated that the statements at issue were made with actual malice. Liberty alleges that Grabert wrote the above statements "with the knowledge that said statements are false and for the sole purpose to damage the good will and reputation of Liberty." Compl. ¶ 50. Liberty, however, does not rely solely on such conclusory assertion, but instead attached exhibits to its complaint and submitted

---

[6] All but one of Grabert's defamatory postings appear on a website called "Unhappy Franchisee." See http://www.unhappyfranchisee.com.

16

affidavits with additional exhibits that detail the online postings made by Grabert. Cf. Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 377-78 (4th Cir. 2012) (indicating that a complaint is deficient in alleging "actual malice" when it is limited to the conclusory assertion that the disputed statements were made "malicious[ly]" or "with reckless disregard as to their veracity").

Based on the complaint and exhibits thereto, and the affidavits and exhibits thereto, the Court finds that Liberty has demonstrated, by clear and convincing evidence, that Grabert acted with actual malice in that she made the defamatory statements with the knowledge that they were false or, at a minimum, with "reckless disregard for the truth." Burke, 216 Va. at 805, 224 S.E.2d at 136. In addition to the defamatory statements identified above, Grabert published lengthy non-actionable opinions regarding Liberty, as well as personal attacks on Liberty's officers, which taken together, suggest an intentional and purposeful effort to injure Liberty's reputation at any cost. Moreover, most notably, in one internet post, Grabert acknowledges: "I simply think [Liberty] corporate is incompetant [sic], unresponsive, and indifferent. I don't think for a second that they promote anything illegal. Unethical? Maybe if you interpret it that way." Compl. Ex. 2, ECF No. 1-2 at 4. Such post, which is dated after all of the posts found to

17

be actionable defamation in this case, clearly supports Liberty's contention that Grabert's earlier defamatory posts, alleging unlawful conduct, false reporting of financial information, operating a "scam" and a "con," ordering franchisees to falsely report their business revenue, and "steal[ing]" franchisees' businesses, were made <u>with knowledge</u> that such statements were false. Accordingly, the Court finds that Liberty has alleged facts supporting each element of its claim for defamation <u>per se</u>, and further demonstrated that the disputed statements were made with actual malice. The Court therefore **GRANTS** Liberty's motion for entry of default judgment on its defamation claim as to liability.

Having determined liability, the Court turns to Liberty's claims for defamation damages. Although Liberty has not attempted to prove that Grabert's statements resulted in the loss of actual revenue, Liberty has linked its damages request, and punitive damages request, to the cost of a new Liberty tax franchise. As previously noted, Liberty is not obligated to prove actual damages because it has demonstrated defamation <u>per se</u>. <u>Swengler</u>, 993 F.2d at 1071 (<u>citing</u> <u>Fleming</u>, 221 Va. at 889-90, 275 S.E.2d at 636). However, in light of the fact that the Court has already determined that a hearing should be conducted to address whether Liberty is entitled to a permanent injunction based on Grabert's breach of the franchise agreements, the Court

finds that the better course is to allow Liberty an opportunity to present oral argument on this issue in order to further elaborate its theory as to why an award of $120,000 for defamation is appropriate in this case. See Fed. R. Civ. P. 55(b)(2) (authorizing a district court to conduct a damages hearing in the default judgment context). The Court therefore **GRANTS** Liberty's request for a hearing on this issue and **DEFERS ruling** on the amount of defamation damages.[7]

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Liberty's motion for default judgment on the issue of liability as to: (1) breach of the promissory notes and (2) defamation per se. Furthermore, as to the breach of the promissory notes, Liberty has advanced sufficient evidence to support a damages award at this time. Accordingly, default Judgment is **ENTERED** in favor of Liberty in the following amounts: (1) **$170,814.77**, the aggregate outstanding balance owed by Defendant on the four promissory notes; and (2) **$1,600.00** in attorney's fees associated with Liberty enforcing such promissory notes.

As to the propriety of entering a permanent injunction, and as to the damages for defamation, the Court **GRANTS** Liberty's

---

[7] The Court notes that Liberty's complaint also seeks an injunction instructing Grabert to remove her internet postings. However, Liberty has failed at this time to demonstrate either that any harm that may have resulted from such postings is "irreparable" or that a monetary award is inadequate.

19

request for a hearing on such issues and **WITHHOLDS** ruling at this time as to such matters. See Fed. R. Civ. P. 55(b)(2) (permitting the Court to conduct an evidentiary hearing to "determine the amount of damages" or to "investigate any other matter"). At such hearing, Liberty will be permitted to present any relevant evidence and argue as to the appropriate resolution of the outstanding matters.

Liberty's counsel is **DIRECTED** to contact the undersigned judge's calendar clerk to schedule a hearing. Furthermore, once a hearing date is selected, Liberty is **INSTRUCTED** to: (1) file on the public record in this case a "Notice" of such hearing; and (2) consistent with its obligation as to all filings, mail a copy of such "Notice" to Defendant Grabert.

The Clerk is **DIRECTED** to provide a copy of this Opinion and Order to counsel for Liberty and to mail a copy to pro se Defendant Grabert, who is not a registered e-filer in this Court.

**IT IS SO ORDERED.**

                                                  /s/ MSD
                                             Mark S. Davis
                               United States District Judge

Norfolk, Virginia
March 26, 2014
*Nunc pro tunc to December 30, 2013,
the date the original Opinion and Order
was signed and entered*